**INDIANA STATE HIGHWAY COMMIS-SION, State of Indiana, Appellant (Plaintiff Below),**

v.

**AMOCO OIL COMPANY (Standard Oil Company), Appellee (Defendant Below).**

**No. 2–278A50.**

Court of Appeals of Indiana, Fourth District.

July 15, 1980.

Rehearing Denied Aug. 22, 1980.

Theo. L. Sendak, Atty. Gen., Daniel P. Miller, Deputy Atty. Gen., Indianapolis, for appellant.

William P. Wooden, John D. Nell, Wooden, McLaughlin & Sterner, Indianapolis, Stuart, Branigin, Ricks & Schilling, Lafayette, for appellee.

YOUNG, Judge.

The Indiana State Highway Commission [Commission] appeals from the grant of summary judgment in favor of Amoco Oil Company. The Commission sought to enjoin Amoco from maintaining a sign in Tippecanoe County near the exit ramp of the I–65 and S.R. 26 interchange. The trial court, on motion by Amoco, found that there existed no genuine issue of material fact and Amoco was entitled to summary judgment. We reverse.

When reviewing the granting of a summary judgment this court must determine whether any genuine issue of material fact exists. In determining whether a factual controversy exists, the trial court must resolve all doubts against the proponent of the motion. All facts properly asserted by the non-movant in affidavits or answers to interrogatories or admissions must be taken as true. The only other review we undertake is to determine whether the court correctly applied the law. *Johnson v. Wabash County*, (1979) Ind.App., 391 N.E.2d 1139.

The facts not in dispute are: A high-rise sign in the form of a crown with the word "Standard" thereon is maintained in the northwest quadrant of the interchange of I–65 and S.R. 26, near Lafayette. The sign is located approximately 30 feet from the exit ramp of I–65, an interstate highway. The sign is located on property owned by Amoco but separated from the gas station by a public road and other property over which defendant has an easement.[1] The area where the sign is located is zoned as "Accommodation Business District" and a variance and permit were allowed for the construction of the sign. The sign was erected sometime after October 4, 1971. The sign is in an industrial or commercial district within the contemplation of the federal and state Acts. It is outside an incorporated municipality.

The issue becomes whether the location of the sign violates the law. The relevant law has for its point of origin the Highway Beautification Act of 1965, 23 U.S.C. § 131 (1976). The expressed purpose of the Act is to control outdoor advertising on the interstate system in order to "protect the public investment in such highways, to promote the safety and recreational value of public travel, and to preserve natural beauty." § 131(a). Section 131(b) gives the states the primary task of providing for effective control and if a state does not make provision for effective control, a ten percent reduction in federal aid funds for the state's highways is imposed. Effective control

---

1. At the trial court level Amoco attempted to have the sign determined to be a highway identification sign and/or an on-premise sign. 23 U.S.C. § 131(C)(3); 23 C.F.R. § 750.105(a).

However, the parties at the time of summary judgment and on appeal pursue another avenue of resolution.

means that signs within 660 feet of the right of way must be limited to the five categories of § 131(c). Section 131(d) permits signs, consistent with customary use as determined by agreement between the state and the federal government, to be constructed within 660 feet in areas zoned industrial or commercial according to state law. The state has full authority to so zone areas under its own zoning laws. Subsection (d) continues by stating whenever a state, county, or local zoning authority determines customary use such determination will be accepted in lieu of controls by agreement in the zoned commercial and industrial areas within the jurisdiction of such authority. Section 131(k) allows a state to provide for limitations more strict than those required by the Act.

Indiana's General Assembly responded to its task of providing effective control by enacting the Highway Advertising Control Act of 1967. Ind. Code 8–12–2–1 et seq. Ind. Code 8–12–2–3 limits signs within 660 feet of the interstate to four categories, the relevant one of which is compliance with Ind.Code 8–12–2–4. Ind. Code 8–12–2–4 provides that signs within 660 feet in industrial or commercial zoned areas must conform to the agreement. However each entity vested by law to zone land has full authority to zone areas for commercial or industrial purposes, and their actions are accepted for purposes of the state Act. Ind. Code 8–12–2–11(a).

Pursuant to the authorization of the federal and state Acts, Indiana by the Governor and the United States by the Secretary of Transportation entered an agreement in 1971. The agreement applies to all zoned commercial and industrial areas within 660 feet of the interstate. The State agreed to effectively control or cause to be controlled outdoor advertising (other than that upon property for sale or lease or that upon property where the advertised activity is conducted) as follows:

The State hereby agrees that, in all areas within the scope of this Agreement, the State shall effectively control, or cause to be controlled, the erection and maintenance of outdoor advertising signs, displays, and devices erected subsequent to the effective date of this Agreement, other than those advertising the sale or lease of the property on which they are located, or activities conducted thereon, in accordance with the following:

A. In zoned commercial and industrial areas, the State may notify the Secretary as notice of effective control that there has been established within such areas comprehensive zoning which regulates the size, lighting, and spacing of outdoor advertising signs consistent with the intent of the Act and with customary use.

B. In all other zoned and unzoned commercial and industrial areas, within the scope of this agreement, the criteria set forth below shall apply.

. . . [We omit the specific details of size, spacing, and lighting.]

C. The State and local political subdivisions shall have full authority under their own zoning laws to zone areas for commercial or industrial activities and the action of the State and local political subdivisions in this regard will be accepted for the purposes of this Agreement. At any time that a political subdivision adopts comprehensive zoning which includes the regulation of outdoor advertising in industrial or commercial areas, control will be subject to subsection A of this section.

Amoco argues that pursuant to 23 U.S.C. § 131(d) where a local zoning authority has determined customary use, the local zoning authority's determination is controlling. It argues that the sign is not in violation of federal law and complies with local zoning which is accepted in lieu of the agreement and should therefore be allowed to remain.

The Commission contends that (1) 23 U.S.C. § 131(f) controls signs in interchange areas; (2) IC 18–12–2–4 requires all signs to conform to the standards in the agreement; and (3) that if the local zoning authority adopted a zoning plan regulating outdoor advertising in industrial and commercial areas, as it is authorized to do in the agreement (§ III–C), there is no evidence that

notification of the establishment of effective control has been given.

We first note that the language of 23 U.S.C. § 131(d) is permissive rather than mandatory. By use of permissive language in subsection (d), the State or local authority need not permit controlled signs within 660 feet even in areas zoned industrial or commercial. *See* Cunningham, *Billboard Control under the Highway Beautification Act of 1965*, 71 Mich.L.R. 1295, 1302 (1973). Section 131(d) states "In order to promote the reasonable, orderly and effective display of outdoor advertising while remaining consistent with the purposes of this section, signs, displays and devices . . . *may* be erected and maintained *within six hundred and sixty feet* of the nearest edge of the right-of-way within areas . . . which are zoned industrial or commercial under authority of state law . . . ." The signs or displays must be consistent with customary use as determined by the agreement, unless a bona fide state, county or local zoning authority has made a determination of customary use, then such determination will be accepted in lieu of the agreement. Section 131(k) was designed to allow states to impose stricter limitations than those in the federal statute and to make it clear that the federal statute does not give a federal right to maintain advertising signs within the 660 foot strip. Cunningham, *Billboard Control*, 71 Mich.L.R. 1295, 1302.

By statute, the Legislature of Indiana has imposed stricter limitations than required by § 131(b) and (c) and the permissive language of (d). Ind. Code 8–12–2–3 provides that "No sign shall be erected or maintained in an adjacent area[2] . . . except the following: . . . (d) signs located or to be located in areas which comply, or will comply when erected, with the provisions of section 4 of this act." Ind. Code 18–12–2–4 states in part, "*All signs in adjacent areas*, such areas being industrial or commercial in character, and whether

zoned or unzoned, *shall conform to those standards* as to size, lighting and spacing as shall be *set forth in the agreement* between the state of Indiana and the secretary." [Our emphasis]. The legislature has required all signs in the adjacent areas where signs are *permitted* by 131(d) to conform to the standards set forth in the agreement. Signs are allowed to be maintained in the adjacent area. If the State had not established stricter limitations than required by § 131, then possibly the determination by the local zoning authority would control in lieu of the agreement. Amoco also argues that Ind. Code 8–12–2–11(a), which states that the local authority "vested by law with authority to zone land, shall have full authority to zone areas for commercial or industrial purposes, and their actions in this regard will be accepted for purposes of this act" gives control of signs to the local authority. We do not agree. This section gives the local authority the power to zone and their *classification* as commercial or industrial will be accepted for purposes of the act. To give this section any other meaning would render other parts of the act meaningless.

■ The standards of the agreement control. Ind. Code 8–12–2–4 *supra*. The agreement provides that if the area has been zoned commercial or industrial the zoning ordinance will be accepted as effective control *upon notice* to the Secretary of Transportation. § III–A. The agreement thereby permits the local zoning authority to control the signs within its boundaries by standards other than those in § III–B. Also, it a local subdivision adopts a comprehensive zoning plan which includes regulation of outdoor advertising in commercial or industrial areas, it will control subject to § III–A. § III–C. However, if notice is not given the provisions of § III–B apply. In this case, there is no evidence that notice was given such that the local authority will control the area.[3] In view of this record,

---

**2.** Adjacent area is defined as the area within 660 feet of the nearest edge of the right-of-way of any interstate highway. Ind. Code 8--12 2 2.

**3.** The agreement provides that the State *may give notice of effective control*, implying some discretion may be involved in determining whether notice of effective control by virtue of a local zoning ordinance will be given.

the appellees cannot be said to have carried their burden of demonstrating the absence of any material issue of fact and that they were entitled to judgment as a matter of law. The evidence presented was insufficient to clarify all the factual problems attendant upon the resolution of the legal issue involved.

We reverse and remand for proceedings consistent with this opinion.

MILLER, P. J., and CHIPMAN, J., concur.